UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOSEPH WILLIAMS,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

Defendant.

Case No. 17-cv-1223-BAS (RNB)

**ORDER:**

**(1) DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT (ECF No. 24); AND**

**(2) GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT (ECF No. 29)**

On June 16, 2017, Plaintiff Joseph Williams filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Acting Commissioner of Social Security denying his application for a period of disability and disability insurance benefits. (ECF No. 1.)

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. The Court finds these motions suitable for determination on the

1

papers submitted and without oral argument.[1]  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1).  For the reasons set forth herein, Plaintiff's motion for summary judgment is **DENIED**, and the Commissioner's cross-motion for summary judgment is **GRANTED**.

## PROCEDURAL BACKGROUND

On September 8, 2014, Plaintiff protectively filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability since January 1, 2012.  (Certified Administrative Record ("AR") 144-50, ECF No. 22.)  After his applications were denied initially and upon reconsideration (AR 88-92, 97-99), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ").  (AR 100-03.)  An administrative hearing was held on July 11, 2016.  Plaintiff appeared at the hearing with counsel, and testimony was taken from him and a vocational expert ("VE").  (AR 41-60.)

As reflected in his August 29, 2016, hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from his alleged onset date through March 31, 2016, the date last insured.  (AR 13-36.)  The ALJ's decision became the final decision of the Commissioner on November 22, 2016, when the Appeals Council denied Plaintiff's request for review.  (AR 8-12.)  This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from January 1, 2012, his alleged onset date, through March 31, 2016, his date last insured.  (AR 18.)

At step two, the ALJ found that, through the date last insured, Plaintiff had the following severe impairments: obesity, degenerative disc disease, osteoarthritis of the

[1] The Court withdraws its reference to the magistrate judge (ECF No. 5).

17cv1223

bilateral knees, migraine headaches, hypertension, and neuropathy in the left foot. (AR 18.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. (AR 28.)

Next, the ALJ determined that, through the date last insured, Plaintiff had the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 C.F.R. § 404.1567(b), except specifically, [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can sit, stand, and walk for six hours each in an eight-hour workday. He can push and/or pull as much as he can lift and/or carry. He can occasionally climb ramps or stairs; he can occasionally climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl.

(AR 29.) For purposes of his step four determination, the ALJ adduced and accepted the VE's testimony that a hypothetical person with Plaintiff's vocational profile would be able to perform the requirements of Plaintiff's past relevant work. Accordingly, the ALJ found that Plaintiff was not disabled at step four. (AR 35-36.)

## SOLE ISSUE IN DISPUTE

According to Plaintiff, "the only question in issue is the vocational impact of the Plaintiff's well documented migraine headaches." (*See* ECF No. 24 at 16.) The Commissioner contends in her cross-motion that, by challenging only the ALJ's evaluation of the vocational impact of Plaintiff's migraine headaches, Plaintiff has: (1) conceded the accuracy of the ALJ's other findings, including the ALJ's assessment of the medical evidence regarding Plaintiff's migraines and the ALJ's finding regarding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms; and (2) waived any challenge to those findings. (*See* ECF No. 29-1 at 18-20.)

To be sure, if Plaintiff was challenging, for example, the ALJ's step three determination that Plaintiff did not have an impairment or combination of impairments that

met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments, the Court would have expected his counsel to explicitly make that claim in his supporting memorandum, specify the Listing that Plaintiff contended his impairment met or medically equaled, and cite the medical evidence of record that he contended met or equaled all the criteria of the Listing. Plaintiff's counsel did not do any of these things.

Further, if Plaintiff was challenging the ALJ's evaluation of the opinions of any of the physicians of record, the Court would have expected his counsel to explicitly make that claim in his supporting memorandum, identify the physicians of record whose opinions Plaintiff was contending the ALJ failed to properly evaluate, set forth the governing legal standard, and set forth arguments in support of his contention that the ALJ failed to follow the proper legal standard in his evaluation of those physicians' opinions. Plaintiff's counsel did not do any of these things.

And, if Plaintiff was challenging the ALJ's adverse credibility determination with respect to Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms, the Court would have expected his counsel to explicitly make that claim in his supporting memorandum, set forth the governing legal standard, and set forth arguments in support of his contention that the reasons given by the ALJ in support of his adverse credibility determination did not satisfy the governing legal standard. Plaintiff's counsel did not do any of these things.

Nevertheless, the Court concludes that Plaintiff's contention that the ALJ "erred in failing to adequately consider the vocational impact of Plaintiff's frequent work interruptions due to migraine headaches," which is the heading to the argument section in Plaintiff's supporting memorandum, turns on whether the ALJ should have credited Plaintiff's statements concerning the intensity, persistence, and limiting effects of his

migraine headaches.[2]  Accordingly, notwithstanding the failure of Plaintiff's counsel to properly raise and brief this issue, the Court will deem this item the sole issue in dispute.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla," but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). "Where evidence is susceptible of more than one rational interpretation," the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## DISCUSSION

The Court must determine whether the ALJ's adverse credibility determination satisfies the governing legal standard. An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." *See Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989); *see also Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1986). "To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective

---

[2] The Court notes that Plaintiff concedes that "he has the physical and mental capacity to [perform] his former work unless he is having a severe migraine." (ECF No. 24 at 17.)

medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the first step is satisfied, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [the claimant's] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.*; *see also Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Bunnell*, 947 F.2d at 343. "General findings are insufficient; rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (internal quotation marks and citations omitted).

As noted above, at step two of the Commissioner's sequential evaluation process, the ALJ found that Plaintiff's migraine headaches qualified as a severe impairment. At the administrative hearing, Plaintiff testified that his migraine headaches prevented him from doing his former job as a consultant with Raytheon (AR 45); that he would miss two days a month while working at Raytheon due to headaches (*id.*); and that, while he was let go due to a reduction in force in July 2010, he believed he was specifically let go because of him missing work (AR 46). Plaintiff further testified that he has migraines between 20 and 23 days per month; that some are mild, and others are moderate or severe; and that it takes him 12-16 hours to recover from a severe migraine. (AR 47.) Plaintiff described a mild migraine as one that is distracting, but still allows him to focus. (AR 40.) Plaintiff said he averaged approximately three severe migraines per month, ten moderate migraines per month, and ten mild migraines per month. (AR 48.)

In addition, Plaintiff testified Botox treatment reduced the frequency of his headaches by approximately 25%. (AR 48.) He testified that he also took sumatriptan for severe headaches (*id.*), and that when he had a severe migraine, he injected himself with Imitrex (AR 49). Plaintiff further testified that when he had a severe migraine, he did not even leave his house. (*Id.*) Plaintiff testified that he also took CBD oil that occasionally helped the mild to moderate headaches, but was no benefit to his severe headaches. (*Id.*)

6

The VE testified that, if a hypothetical individual with Plaintiff's vocational profile had to miss three days of work per month due to migraine headaches, such an individual could not sustain any work. (AR 59.) Accordingly, the ALJ's finding that Plaintiff remained capable of performing his past relevant work turned on the ALJ's determination that, while "[Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 30.)

As a preliminary matter, the Court notes that, under the governing standard set forth above, an ALJ is only required to provide clear and convincing reasons for rejecting a claimant's testimony when there is no evidence of malingering. *See, e.g.*, *Smolen*, 80 F.3d at 1283-84. Here, the ALJ did cite evidence in the treatment record of symptom exaggeration. (*See* AR 22.) However, the ALJ did not use the word malingering, and the Court will assume without deciding that "symptom exaggeration" is not equivalent to "malingering." The question thus becomes whether the reasons cited by the ALJ in support of his adverse credibility determination qualify as "clear and convincing." The Court gleans from the ALJ's decision at least four reasons in support of his adverse credibility determination.

First, the ALJ noted that, although Plaintiff's headaches began in the early 1990s, Plaintiff continued to work well into the twenty-first century with his headaches at approximately the same level of severity prior to the alleged onset date; and that Plaintiff did not stop working due to the impairment, but because of a "reduction in force," and he likely would have continued to work after July 2010, if not for the layoff. (AR 29.) The Court finds that Plaintiff's cited ability to work notwithstanding the migraine headache symptoms constituted a clear and convincing reason on which the ALJ could properly rely in support of his adverse credibility determination. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an

ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (providing an ALJ may properly rely on fact that claimant left his job because he was laid off, rather than because he was injured); *see also Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (holding that continued work undermines disability).

Second, the ALJ cited inconsistencies in Plaintiff's testimony about the frequency of his headaches. Although Plaintiff had testified at the administrative hearing that he saw only a 25% reduction in the frequency of headaches while using Botox, he had informed one of his doctors on March 4, 2015, that his Botox injections had been very successful in relieving his migraine headache symptoms. (*See* AR 29-30 (citing AR 990).) Later on in his decision, the ALJ noted that another of Plaintiff's doctors reported on February 23, 2016, that Plaintiff's headaches had been tolerable on his current regimen, including Botox injections every three months—and that Plaintiff said he was only getting **two** severe headaches a month. (AR 32 (emphasis added) (citing AR 1104).) The Court finds that these inconsistencies in Plaintiff's testimony also constitute a clear and convincing reason on which the ALJ could properly rely in support of his adverse credibility determination. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (providing an ALJ may use "ordinary techniques of credibility evaluation," such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony); *Smolen*, 80 F.3d at 1284 (noting an ALJ may consider "prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid"); *Bunnell*, 947 F.2d at 346 ("[T]he adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence.").

Third, the ALJ cited Plaintiff's level of activity. He noted that Plaintiff had shared all that was "going on in his life" in April 2015 with his treating psychologist, Dr. Mallon. Plaintiff's son was graduating from high school and wished to attend Arizona State University. Plaintiff had bought a mobile home near Camp Pendleton on the California

coast, and he had been spending much time there. He had other friends living in Palm Desert, California, and he wanted to get a residence there as well. He had an offer to move to Germany to assist with a graduate program in American Studies based in Heidelberg. He was preparing to sell his Oregon home, but he had been acting as a mentor to several high school students and had also been helping coach his son's high school basketball team. He also functioned on the Board of the local United Service Organizations center, which he had helped bring to Portland. Plaintiff told the doctor he realized he had "lots of irons in lots of fires," but that he felt he was doing pretty well coping. (AR 30, citing AR 1189-90.) Earlier in his decision, the ALJ had noted that Plaintiff had travelled to Europe from April 5 to May 20, 2016, and he had played golf twice in the week prior to the hearing. (AR 24.) It seems to the Court that this level of activity cannot be reconciled with Plaintiff's testimony to the effect that his migraine headaches are of disabling severity. The Court therefore finds that this third reason cited by the ALJ also constitutes a clear and convincing reason on which the ALJ could properly rely in support of his adverse credibility determination. *See Berry v. Astrue*, 622 F.3d 1228, 1234-35 (9th Cir. 2010) (concluding evidence that claimant's self-reported activities suggested a higher degree of functionality than reflected in subjective symptom testimony adequately supported adverse credibility determination); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (reasoning evidence that claimant exercised and undertook projects suggested that claimant's later claims about the severity of his limitations were exaggerated); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (providing evidence of daily activities may form the basis of an adverse credibility determination where it contradicts the claimant's other testimony).

Fourth, the ALJ cited evidence in the record indicative of Plaintiff's tendency to exaggerate his symptoms. Specifically, the ALJ cited: (1) an incident when Plaintiff had feigned assaulting a clinician who had asked follow-up questions that Plaintiff stated he did not like; and (2) Plaintiff's scores on the Minnesota Multiphasic Personality Inventory (MMPI-2) test administered by Dr. Mallon on September 10, 2012, after Plaintiff's alleged

9

onset date. (AR 30 (referring to AR 1167 and AR 548).) According to Dr. Mallon, "[m]ultiple indicators in [Plaintiff's] validity profile suggest that the test results are not valid," and "[m]ore specifically, the results suggest that the patient exaggerated his report of symptoms and problems on the MMPI-2 assessment." Further, Dr. Mallon noted, "This response set may affect the validity of other symptom reports." (AR 548.) The Court finds that this also constitutes a clear and convincing reason on which the ALJ could properly rely in support of his adverse credibility determination. *See Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002) (concluding ALJ properly discredited subjective symptom testimony based on finding that claimant engaged in exaggeration); *Tonapetyan*, 242 F.3d at 1148 (reaching the same result where claimant had a "tendency to exaggerate").

In sum, the Court finds the ALJ provided "specific, clear and convincing reasons" for rejecting Plaintiff's testimony about the severity of his symptoms. *See Smolen*, 80 F.3d at 1281. The Court therefore concludes the ALJ did not err in his adverse credibility determination. Accordingly, the Court rejects Plaintiff's contention that the ALJ "erred in failing to adequately consider the vocational impact of Plaintiff's frequent work interruptions due to migraine headaches." (ECF No. 24 at 12.)

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is **DENIED**, the Commissioner's cross-motion for summary judgment is **GRANTED**, and it is hereby **ORDERED** that Judgment be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

**IT IS SO ORDERED.**

**DATED: June 15, 2018**

Hon. Cynthia Bashant
United States District Judge